**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **INSTANT TAX SERVICE** | * | |
| **10060, LLC** *et. al*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. **PJM 08-2364** |
| | * | |
| **TCA FINANCIAL, LLC** | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Earlier this year, the Court granted Defendant TCA Financial a/k/a ITS Financial's ("ITS") Motion for Summary Judgment and granted it leave to file a Rule 11 Motion for Sanctions against Plaintiffs and their counsel.

ITS has now filed such a motion, seeking $91,281.28 for fees and costs from Instant Tax Service 10060 and Charita Douglas (collectively "Douglas") and from Douglas's counsel, Donald Temple, Esquire and William Johnson, Esquire. Douglas has filed an Opposition and Surreply. For the following reasons, ITS's Motion for Sanctions is **GRANTED.** The Court **AWARDS** ITS a total of $40,000 in sanctions, $30,000 jointly and severally against Messrs. Temple and Johnson, and $10,000 against Douglas individually.

**I.**

**A.** ITS is engaged in the business of granting franchises to persons to operate retail tax preparation and electronic tax return filing businesses. Douglas, a former franchisee of ITS, entered into a written franchise agreement with ITS on July 24, 2006 to operate a franchise in

-1-

Lanham, Maryland.  Several months after executing the franchise agreement, the parties entered into an oral agreement for Douglas to open four additional franchises.  While a written agreement was not executed as to these offices and they were structured to operate independently, it was understood and agreed that they would operate according to the terms and conditions of the written agreement, which in fact they did.

On June 28, 2007, Douglas initiated an arbitration action against ITS based on the Company's alleged failure to pay her and for depriving her of pertinent information.  Her Demand For Arbitration claimed: (i) breach of contract, (ii) wrongful termination of franchise agreement, (iii) conversion, (iv) breach of fiduciary duty, (v) negligence, (vi) fraud, and (vi) unjust enrichment.  The arbitrator granted ITS's Motion for Partial Summary Judgment as to all but the breach of contract claim and, after an evidentiary hearing on that claim, ordered that Douglas recover nothing on her demand.

Douglas then filed a Complaint in this Court, alleging essentially the same claims she had advanced in the arbitration.  Apparently seeking to avoid the *res judicata* effects of the arbitration proceeding, she took the step of adding ITS 10060, her wholly-owned LLC, as a plaintiff, alleging that it was a third party beneficiary of the contract between Douglas and ITS, and that it had not been a party to the arbitration.

**B.**     Shortly after suit was filed, counsel for ITS had a conversation with Douglas's then counsel, Reggie Richter, Esquire,  advising him of the prior arbitration and the fact that a dispositive award favorable to ITS had been made.  Despite this, Richter declined the invitation to drop the suit.  On October 24, 2008, ITS attorneys sent a letter to Messrs. Temple and Johnson, who succeeded Richter as Douglas's counsel, emphasizing that the claims in the Complaint had been previously resolved in the arbitration.  Pointing out that *res judicata* would

extend to all claims that were raised or could have been raised in the arbitration, ITS attorneys asked that the suit be withdrawn by October 29, 2008.  They further advised counsel that if Douglas refused to drop the suit, ITS counsel would submit a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11.

Two days prior to the October 28 deadline, Temple advised ITS counsel that he and his co-counsel were working on their response to the October 24 Letter and requested an additional week to respond.  ITS counsel consented to the extension.  No response, however, was ever sent. Consequently, ITS filed a Motion for Summary Judgment, arguing that each of the counts in the Complaint was *res judicata*.  ITS also argued that ITS 10060 was in privity with Douglas and that the arbitration had covered all of the franchise locations, as a result of which, Douglas had no claims remaining.

On December 2, 2008, ITS served Douglas's Attorneys with a Rule 11 Motion.  In response, Douglas filed an Amended Complaint and an Opposition to the Motion for Summary Judgment.  In her Opposition and Amended Complaint, Douglas asserted that ITS 10060, LLC was not in privity with her because Douglas was only a one-third owner of the LLC.  Douglas also took the position that the arbitration only covered claims as to the Lanham location and not the four other stores governed by the oral agreement.  In support of her Opposition to the Motion for Summary Judgment, Douglas submitted an affidavit, under penalties of perjury, attesting that she was one of three owners of ITS 10060, despite the fact that during the arbitration and in her original Complaint, she had claimed to be the sole owner of ITS 10060.  Indeed, during the arbitration Douglas testified under oath that she was the sole owner of ITS 10060, and that her husband, now said to be one of three owners, was not in anyway involved.  Beyond her verbal representations, Douglas has submitted no documentary evidence in support for her more recent

assertion that she is but one of three owners of ITS 10060.  Her affidavit also states that, while she signed an affidavit during the arbitration to the effect that the franchise agreement was understood to cover the four other business, she was in fact mistaken and only more recently has come to realize that the written agreement actually only covered the Lanham store.

**C.**     After hearing argument on the Motion for Summary Judgment, the Court agreed with ITS that all of Douglas's claims were barred by *res judicata,* and that ITS 10060 was clearly in privity with Douglas.  The Court also found that Douglas's arbitration claim had specifically listed a damage amount for the Lanham location as well as the four other stores, that she made a similar claim in her deposition, and that she in fact presented evidence during the arbitration relating to the damages allegedly incurred at all five locations.  Finding all claims in the present suit *res judicata,* the Court granted summary judgment in favor of ITS, allowing ITS twenty days to file a Rule 11 Motion.

**D.**     In the Motion for Sanctions, ITS argues that, since Douglas's claims were clearly barred by *res judicata,* and since ITS counsel alerted Douglas and her attorneys to that fact on several occasions, both Douglas and her attorneys should be sanctioned for filing the Complaint, the Amended Complaint, and the Opposition to ITS's Motion for Summary Judgment.  ITS asks for the attorney's fees and costs incurred to defend this litigation, $91,281.28.

In response, Douglas and her counsel recycle the same arguments they advanced in response to the Motion for Summary Judgment, also attempting to assert new arguments that they believe justified the filing of the suit.  In particular, they argue that a significant choice of law issue applies to the oral modification of the franchise agreement, which would alter the determination about whether disputes relative to the four other stores could have been previously arbitrated.  They further assert that the RICO claim could not previously have been arbitrated

because it is contrary to public policy to arbitrate such claims.  In a word, they maintain that Douglas's claims were not frivolous.

## II.

A district court has discretion over the decision of whether or not to impose sanctions under Federal Rule of Civil Procedure 11.  *See Cohen v. Virginia Elec. & Power Co.*, 788 F.2d 247, 248 (4th Cir. 1996); *In re Kunstler*, 914 F.2d 505, 520-21 (4th Cir. 1990).  In ordering Rule 11 sanctions, the court is not required to hold an evidentiary hearing.  *See* Kunstler, 914 F.2d at 520-21 ("When an attorney has failed to present necessary [information] despite several opportunities to do so, . . . further hearing on the sanctions issue may well be not only unnecessary but also a waste of judicial resources.").

If the court finds that Rule 11 was violated, it "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  The nature of the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on [a party's] motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).  While a court "must not impose a monetary sanction . . . against a represented party for violating Rule 11(b)(2)," a represented party may be sanctioned for his or her role in presenting factual misstatements to the court in violation of Rule 11(b)(3).  Fed. R. Civ. P. 11(c)(5)(A).

## III.

## A.

The "primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit." *Kunstler,* 914 F.2d at 524.  If monetary sanctions are contemplated, the Fourth Circuit requires the district court to consider  "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum amount required to deter the violation; (3) the ability of the party/counsel against whom sanctions are brought to pay; and (4) factors related to the severity of the Rule 11 violation." *Brubaker v. City of Richmond,* 943 F. 2d 1363, 1387 (quoting *Kunstler*, 914 F.2d at 523).  After considering these factors, the court must impose the "least severe sanction adequate to serve the purposes of Rule 11;" the primary focus being on deterrence.  *Kunstler*, 914 F.2d at 522-23.

The Court finds that deterrence will be best achieved in this case through the imposition of a sanction of $30,000 to be paid jointly and severally by Douglas's attorneys, and an additional sanction of $10,000 to be paid by Douglas individually.

The Court begins by considering the reasonableness of ITS's attorneys' fees.  From September 2008 through January 2009, DLA Piper, counsel for ITS, accumulated $85,064.60 in attorneys' fees and $6,216.68 in costs, spending approximately 175 hours on the case.  This included work by two partners, whose billable rates were $590 and $580 per hour, as well as an associate with a billable rate of $520 per hour, and a law clerk billing $310 per hour.  While these rates are on the high side, the Court finds them to be not out of range from the hourly rates charged by other large law firms with clients throughout the United States and abroad.  The Court also finds the hours spent on this case reasonable, particularly in light of the time required

to attempt to persuade Douglas and her counsel to dismiss the suit, then to draft a Motion for Summary Judgment and prepare for and participate in the hearing on the Motion.

As to Temple and Johnson's ability to pay, the Court notes that neither attorney has submitted any filings discussing his ability to pay a sanction, despite the fact that the burden rests with these attorneys to present evidence as to their financial status.  *Brubaker v. City of Richmond,* 943 F.2d 1362, 1387-88 (4th Cir. 1991).  Even without such information, however, the Court notes that both attorneys are members of small, not large nationwide law firms, which obviously bears on their ability to pay a sanctions award.  While the Court is sensitive to the impact that any award will have on these firms, this factor must still be weighed against he nature of the transgression and the need for deterrence.

Turning to the severity of the Rule 11 violation, it should have been abundantly clear even to an inexperienced attorney that all the claims raised in the suit were subject to the *res judicata* effect of the prior arbitration.[1]  Neither Temple nor Johnson are inexperienced attorneys, yet at best they clearly failed to conduct an appropriate inquiry in the case before filing suit. Even if for some reason counsel initially thought Douglas had viable claims, the frivolous nature of the suit should have become fully apparent following ITS counsel's repeated warnings and service of a Rule 11 Motion in December 2008.  Instead of voluntarily dismissing the suit,

---

[1] While Douglas attempts to argue that the stores not governed by the written agreement were not subject to arbitration, it is clear that Douglas herself sought to arbitrate the claims relative to those stores.  As this Court has previously held, parties seeking to challenge an agreement to arbitrate must do so before the matter goes to arbitration, and a plaintiff who submits claims to arbitration without protest, "without a doubt waive[s] any right" to contest the arbitration.  *Owen-Williams v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 907 F.Supp. 134, 137 (D.Md.1995); *aff'd,* No. 96-1442, 1996 WL 688219 (4th Cir. Dec.2, 1996) (per curiam ); *accord ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.,* 102 F.3d 677, 685 (2d Cir.1996).

however, Douglas's counsel forged ahead with an Amended Complaint, further exacerbating the Rule 11 violation.

## B.

While it is true that courts should not impose monetary sanctions on parties if the Rule 11 violation is legal in nature, *see* FRCP 11(c)(5)(A), in this case Douglas was clearly involved in the preparation of her filings and in fact signed an affidavit directly contradicting her sworn arbitration positions, which substantially contributed to the violation. *See Greenblatt v. Prescription Plan Servs. Corp.,* 783 F.Supp. 814, 829 (S.D.N.Y. 1992) (in awarding attorney's fees jointly and severally as between defendant and his attorneys, the court found that "[a]lthough it [wa]s defendants' attorney who failed to conduct a reasonable investigation into the legal or factual bases for the counterclaims, it is clear that [defendant] shares with his attorney the responsibility for engineering defendants' dilatory strategy" because in defendant's sworn affidavit, he "himself aver[red] the purported facts entitling the counterclaimants to recovery...").

No convoluted legal theory caused the Rule 11 violation in this case.  Douglas's assertions, encouraged perhaps by her attorneys, that ITS 10060 was not in privity with her as to the original arbitration; that she was not the sole owner of ITS 10060; and that the four additional stores were not covered by the arbitration, were plain to see and just as plainly false. By submitting an affidavit dealing directly with these issues, essentially in direct contradiction of her positions in the arbitration, Douglas unquestionably participated in the violation.  For that she must be held accountable.

The Court has been provided no information as to Douglas's ability to pay a sanction.

## C.

How much of a sanction, then, is appropriate?  The reasonableness of ITS's counsel's fee is only the beginning of the analysis.  The ability of Douglas and her attorneys to pay any award certainly tempers the amount.

The matter comes down to the severity of the violation and the minimum award needed to deter such violations in the future.  As for the severity of the violation, this was a suit that should never have been filed – which is not to say that a suit challenging the propriety of the arbitrator's award would have been inappropriate.  Douglas may or may not have informed counsel of the prior arbitration, but it seems certain that counsel did not, at least initially, look closely into it.  But thereafter, having been clearly warned of the arbitration, counsel went ahead full steam to circumvent it.  As for Douglas, either on her own or with inappropriate encouragement, she suddenly claimed to be only a part owner of an organizational entity along with her husband and one other person, in flat contradiction of her sworn statement in arbitration.  She also went along with the theory that her organizational affiliate, not named in the written franchise agreement, was the real party in interest.  Douglas also claimed under oath in this case – falsely in the Court's view – that she had been mistaken in the arbitration.  The present suit suggests nothing so much as an effort to squeeze ITS to agree to settlement, notwithstanding that it had successfully defeated all of Douglas's claims in the arbitration.  The violation of Rule 11 is surely serious enough.

But it is the minimum needed to deter such conduct that ultimately decides the matter for the Court.  A sanction in excess of $90,000, which ITS seeks here, is far more than needed to

deter, and given the size and nature of Douglas's counsel's practices and given her own, unknown resources, far more than they could reasonably be expected to pay.

Considering all the factors, the Court will award ITS a total of $40,000 as a sanction, less than half of what it asks for, but enough to make an emphatic point to Douglas and her attorneys, all of whose conduct the Court finds indefensible.

The Court believes counsel bear more responsibility than Douglas in this case, because they could have advised her not to pursue this suit.  For that, the Court assesses Messrs. Temple and Johnson $30,000, for which they will jointly and severally liable.  As for Douglas, the Court finds that, on account of her misrepresentations in the case, she should be individually responsible for an additional $10,000.

## IV.

For the foregoing reasons, the Court **GRANTS**  ITS's Motion for Sanctions, and **AWARDS** ITS a total of $40,000 in sanctions, $30,00 jointly and severally against Messrs. Temple and Johnson, and $10,000 against Douglas individually.

A separate Order will issue.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

August 14, 2009